UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE ERICA TAYLOR,          Civil Action No.: 17-10039
                                Honorable Denise Page Hood
            Plaintiff            Magistrate Judge Elizabeth A. Stafford

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

            Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 13, 16]**

Plaintiff Jasmine Taylor appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision properly applied the treating physician rule and evaluated Taylor's severe impairments and thus **RECOMMENDS** that:

- the Commissioner's motion **[ECF No. 16]** be **GRANTED**;

- Taylor's motion **[ECF No. 13]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Taylor's Background and Disability Application

Born September 7, 1990, Taylor was 23 years old, a younger individual, when she submitted her application for supplemental security income in November 2013.  [ECF No. 10-2, Tr. 12, 22].  Taylor alleges a disability onset date of August 25, 2012. [*Id.*, Tr. 12].

After a hearing on June17, 2015, during which Taylor and a vocational expert (VE) testified, the ALJ found that Taylor was not disabled. [ECF No. 10-2, Tr. 12-23, 30-65].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-5].  Taylor timely filed for judicial review.  [ECF No. 1].

### B.   The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).

2

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 920(c).

Applying this framework, the ALJ concluded that Taylor was not disabled. At the first step, she found that Taylor had engaged in substantial gainful activity during the relevant period, specifically August through December 2014. [ECF No.10-2, Tr. 14]. At the second step, she found that Taylor had the severe impairments of "obesity, hypertension, asthma and other breathing-related issues (including sleep apnea)." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 16-17].

Between the third and fourth steps, the ALJ found that Taylor had the RFC to perform sedentary work,[2] except that:

she can sit no more than six hours per day but no more than one hour at a time and stand/walk no more than two hours per day but no more than 15 minutes at a time. She is further limited to no more than occasional balancing on dry and level surfaces and occasional crouching and stooping. She should also never climb, crawl or kneel and can have only occasional exposure to flashing lights and/or environmental irritants. She

---

[2] In order to perform a full range of sedentary work, an individual must be able to lift up to 10 pounds, with occasional lifting or carrying of objects like docket files, ledgers and small tools. Walking and standing are required occasionally, in addition to sitting. 20 C.F.R. § 416.967(a).

4

should also have no exposure to workplace hazards, including balancing on narrow, slippery, and/or erratically moving surfaces; climbing of ropes, ladders, or scaffolding; and hazardous machinery.  [She] is further limited to work consisting of simple, routine tasks, defined as tasks generally mastered in less than 30 days.[ECF No. 10-2, Tr. 17].  At step four, the ALJ found that Taylor was not capable of performing her past relevant work as a child monitor.  [*Id.*, Tr. 21].  At the final step, after considering Taylor's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Taylor could perform, including positions as bench assembler (e.g., lens inserter) and document preparer.  [*Id.*, Tr. 22]

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Taylor argues that the RFC finding that she was capable of a restricted range of sedentary work was not supported by the substantial evidence. She contends that the ALJ reached that conclusion by erroneously discounting the opinions of her treating physician and incorrectly applying agency rules regarding obesity and sleep apnea. [ECF No. 13, PageID 840-46]. The Court disagrees, finding that these arguments are without merit and the ALJ's decision should be affirmed.

**A.**

At the hearing, Taylor testified that she was 5'2" tall and weighed 470 pounds. [ECF No. 10-2, Tr. 36]. Taylor's height and weight correspond to a body mass index (BMI) of 86, more than twice the value of the extreme obesity designation. SSR 02-1p. Treatment records reflect that Taylor had some difficulty ambulating and some complaints of knee pain, which physicians attributed to her obesity. [ECF No. 10-7, Tr. 351, 371]. She also had some decreased range of motion in the musculoskeletal system due to her obesity. [*Id.*; ECF No. 10-9, Tr. 734].

Taylor testified that she suffers from asthma, causing periodic coughing and breathing difficulty. [ECF No. 10-2, Tr. 45]. Taylor was treated for acute asthma exacerbations in December 2013, January 2015, and April 2015. [ECF No. 10-8, Tr. 546-56, 568-85; ECF No. 10-9, Tr. 654-82]. Each time, she was stabilized and returned to normal respiratory function in her follow-up examinations. [ECF No. 10-9, Tr. 720, 741, 753, 763, 770]. In June 2014, she was diagnosed with obstructive sleep apnea for which she was prescribed a CPAP. [ECF No. 10-8, Tr. 427]. Taylor's medical records reflect she was non-compliant with CPAP usage. [ECF No. 10-8, Tr. 503]. The medical records also reflect that she has hypertension, which her treating physicians attribute directly to her non-compliance with prescribed hypertension medication. [ECF No. 10-8, Tr. 516; ECF No. 10-9, Tr. 730, 735, 741, 744].

Ahmed Chaudhary, M.D., one of Taylor's primary care providers, completed a physical residual functional capacity questionnaire in May 2015, identifying Taylor's diagnoses as severe persistent asthma, morbid obesity and sleep apnea. [ECF No. 10-9, Tr. 776-779]. After identifying symptoms of shortness of breath, fatigue, racing heartbeat, sleepiness and dizziness and findings and objective signs of bilateral reduced breath sounds, expiratory wheezing, Tachycardia, and denying that Taylor's

7

symptoms were caused by emotional factors, Dr. Chaudhary opined that her symptoms constantly interfered with her attention and concentration; she gasped for air even at rest due to her asthma and morbid obesity; she was incapable of even low stress jobs; she could walk less than one block; she could sit for 20 minutes at a time; she could stand for 15 minutes at a time; she could sit for less than two hours in an eight hour workday and also stand or walk for less than two hours in a workday; she would need unscheduled breaks; she would need to elevate her legs during periods of prolonged sitting up to 50 percent of an eight hour workday; she could occasionally lift less than ten pounds, rarely lift ten pounds and never lift more than that; she could never stoop, crouch or climb ladders and could rarely twist or climb stairs. [*Id.*].

After reciting portions of Dr. Chaudhary's opinion, the ALJ gave it "very little weight," citing as justification that he had provided very little substantive basis or explanation for his opinion, and no report regarding evidence supporting his conclusions about Taylor's limitations. [ECF No. 10-2, Tr. 20]. The ALJ also noted that Dr. Chaudhary's opinion was inconsistent with Taylor's history of routine and conservative treatment and reported activities of daily living, including working at SGA levels for five months within the period she alleged disability, and that the records were

8

unclear as to how frequently Dr. Chaudhary actually saw, evaluated or treated Taylor. [*Id.*]

**B.**

Taylor's argument that the ALJ did not provide good reasons for giving Dr. Chaudhary's opinion little weight is unavailing. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, **and** not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. To properly assess a treating physician's opinion, an ALJ must analyze it under both prongs of the controlling weight test. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

Taylor accuses the ALJ of "dismiss[ing] Dr. Chaudhary's assessment based on unsupported statements that [are] contrary to the substantial

evidence of record." [ECF No. 13, PageID 842]. But, in fact, the ALJ assessed the clinical and diagnostic evidence alongside Dr. Chaudhary's opinion. She noted that aside from acute asthma exacerbations in December 2013, January 2015 and April 2015, Taylor's respiratory examinations were normal and her asthma was noted to be asymptomatic. [ECF No. 10-2, Tr. 19; ECF No. 10-9, Tr. 720, 741, 753, 763, 770]. The ALJ also noted that pulmonary function testing revealed only mild restrictive ventilatory defect but normal spirometry. [*Id.*; ECF No. 10-7, Tr. 384]. She noted that Taylor's records reflect some obesity-related musculoskeletal issues, including knee pain, crepitus upon flexion and extension and some decrease range of motion, but that she could heel, toe and tandem walk without difficulty and displayed normal lower extremity strength. [ECF No. 10-2, Tr. 18; ECF No. 10-7, Tr. 351, 371; ECF No. 10-9, Tr. 734]. The ALJ also noted the absence of findings of swelling in her lower extremities. [ECF No. 10-2, Tr. 20]. The ALJ's conclusion that the diagnostic and clinical evidence did not support Dr. Chaudhary's opinion on Taylor's residual functional capacity justifies her decision to afford it less than controlling weight.

As the ALJ assessed, Dr. Chaudhary's opinion regarding the severity of Taylor's limitations was also inconsistent with other substantial evidence.

10

The ALJ's noted "ample evidence of treatment non-compliance," including Taylor's regular failure to take her hypertension medication and to use her CPAP, suggests symptoms less severe than those addressed by Dr. Chaudhary's restrictions. Also, Taylor's work activity at SGA levels during five months of her alleged period of disability conflicted with Dr. Chaudhary's extreme limitations. In sum, the ALJ adequately assessed Dr. Chaudhary's opinion under the controlling weight test and appropriately determined it did not warrant that designation.

The ALJ's decision also shows that she properly considered the regulatory factors—the length, frequency, nature, and extent of the relationship between Taylor and Dr. Chaudhary, and the supportability and consistency of Dr. Chaudhary's conclusions with the other substantial evidence of record—and her decision to give little weight to Dr. Chaudhary's opinion was supported by those factors. *See Gentry*, 743 F. 3d at 727-28; *Gayheart*, 710 F. 3d at 376.

The ALJ noted that Taylor was treated regularly by numerous providers at the Sinai Primary Care Center but the records do not reflect how frequently she was evaluated or treated by Dr. Chaudhary. Taylor does not attempt to quantify her interactions with Dr. Chaudhary, instead arguing in her brief that one must conclude she was treated regularly by Dr.

11

Chaudhary or he would not have provided a medical source statement on her behalf. [ECF No. 13, PageID 842]. The Court does not find this circular reasoning persuasive.

In addition, as discussed in more detail above, the ALJ considered and assessed that Dr. Chaudhary's findings were not supported by clinical or diagnostic evidence and were inconsistent with Taylor's medical non-compliance and work activity. Accordingly, the Court finds that the ALJ properly applied the treating physician rule and assigned Dr. Chaudhary's opinion with appropriate weight.

## C.

Taylor also argues that the ALJ erred in evaluating her obesity and sleep apnea under SSR 02-1p. After the Social Security Administration removed Listing 9.09 for obesity from the Listing of Impairments, it added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *See* SSR 02-1p, 2002 WL 34686281, at *1. The paragraphs require the adjudicators to consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability.

> The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Id.*

The Sixth Circuit has explained that "'Social Security Ruling 02–01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Sleight v. Commr. of Soc. Sec.,* 896 F. Supp. 2d 622, 630–31 (E.D. Mich. 2012) (quoting *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 577 (6th Cir.2009)). Regarding a claimant's residual functional capacity, the Ruling provides: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 34686281, at *7. The Ruling cautions, however, that adjudicators will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. ALJs will evaluate each case based on the information in the case record. *Sleight*, 896 F. Supp. 2d at 630–31.

13

Here, the ALJ determined that Taylor's morbid obesity was a severe impairment at the second step, [ECF No. 10-2, Tr. 14], and the ALJ clearly considered Taylor's obesity at all steps of the sequential evaluation, discussing it in-depth in the assessment of Taylor's RFC. The ALJ noted that Taylor's height and weight correspond to a BMI of 86, well beyond the agency's designation of extreme obesity. [*Id.,* Tr. 18]. She acknowledged, but did not assume, that obesity may have increased the severity or functional limitations of Taylor's impairments, and stated that she would evaluate each impairment based on the information in the record. [*Id.,* Tr. 18]. In doing so, the ALJ determined that Taylor's obesity-related musculoskeletal issues (reduced range of motion, crepitus and pain in the knee, wide gait) could be accommodated by limiting her to a limited range of sedentary work. [*Id.*, Tr. 17, 18]. And Taylor's allegation that the ALJ did not adequately consider that a consequence of her obesity on her sleep apnea is untrue. The ALJ considered that Taylor was diagnosed with obstructive sleep apnea, but noted that she was noncompliant with using her CPAP. [*Id.*, Tr. 19, 21, citing ECF No. 10-9, Tr. 719, 726]. The ALJ found Taylor's allegations of the severity of her symptoms to be less than credible, and that her noncompliance with the CPAP machine "suggest[ed]

14

an unwillingness to do what is necessary to improve her condition." [*Id.*, Tr. 21].

The ALJ's discussion of Taylor's obesity throughout her decision and her explicit consideration of it as a functional limitation in assessing her RFC adequately accounts for the effect obesity has on Taylor's ability to work. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (ALJ adequately accounted for obesity by discussing it throughout findings and considering it for RFC assessment); *Horning v. Commr. of Soc. Sec.,* 14-11723, 2015 WL 4771440, at *6 (E.D. Mich. Aug. 13, 2015).

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **GRANTED**; that Taylor's motion [ECF No. 13] be **DENIED**; and that the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

                                                         s/Elizabeth A. Stafford
                                                         ELIZABETH A. STAFFORD
Dated: January 24, 2018         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

15

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2018.

                                                 s/Marlena Williams
                                                 MARLENA WILLIAMS
                                                 Case Manager